No. _____

*In the*

# United States Court of Appeals

*for the*

# Fifth Circuit

IN RE Naoise Connolly Ryan, Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, and Guy Daud Iskandar Zen S., Rini Soegiyono, Dayinta Anggana, Helda Aprilia, Serly Oktaviani, Wilson Sandi, Hendrarti Hendraningrum, Dody Widodo, Myrna Juliasari, Merdian Agustin, Adhitya Wirawan, M. Sholekhudin Zuhri, Siska Ong, Wenny Sia Wijaya, Suharto, Rohmiyatun, Sri Umi Anggraini, Permana Anggrimulja, Linda Manfredi, Sonia Lorenzoni, and Maurizio Manfredi — Crime Victim Rights Act Petitioners.

**PETITION FOR A WRIT OF MANDAMUS UNDER THE CRIME VICTIMS' RIGHTS ACT**

**Mandamus from the**
**United States District Court for the**
**Northern District of Texas**
**Case No. 4:21-cr-005-O**

Warren T. Burns
Darren P. Nicholson
Chase Hilton
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
wburns@burnscharest.com
nicholson@burnscharest.com
chilton@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. Univ. St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
*Additional counsel on signature page.*

*Attorneys for Crime Victims' Representatives-Petitioners*

## <u>CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT</u>

No. ___

IN RE Naoise Connolly Ryan, Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, and Guy Daud Iskandar Zen S., Rini Soegiyono, Dayinta Anggana, Helda Aprilia, Serly Oktaviani, Wilson Sandi, Hendrarti Hendraningrum, Dody Widodo, Myrna Juliasari, Merdian Agustin, Adhitya Wirawan, M. Sholekhudin Zuhri, Siska Ong, Wenny Sia Wijaya, Suharto, Rohmiyatun, Sri Umi Anggraini, Permana Anggrimulja, Linda Manfredi, Sonia Lorenzoni, and Maurizio Manfredi — Crime Victim Rights Act Petitioners.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners**

The underlying Crime Victims' Rights Act (CVRA) petition arises out of the crashes of two Boeing 737 MAX aircraft: (1) the crash of Lion Air Flight 610 into the Java Sea near Jakarta, Indonesia, on October 29, 2018, which killed all 189 passengers and crew on board; and (2) the crash of Ethiopian Airlines Flight 302 near Ejere, Ethiopia, on March 10, 2019, which killed all 157 passengers and crew on board. The families of the 346 persons killed in the two crashes have an interest in this case.

The CVRA challenge below was filed by a subset of the crashes victims' families—specifically 31 families, who assumed rights as representatives of their family members who were killed in crashes of Lion Air Flight JT 610 and ET Flight 302. Those representatives are now proceeding collectively, but were represented by separate counsel in the district court:

**Naoise Connolly Ryan;**
**Emily Chelangat Babu and Joshua Mwazo Babu;**
**Catherine Berthet;**

i

**Huguette Debets;**
**Bayihe Demissie;**
**Luca Dieci;**
**Zipporah Muthoni Kuria;**
**Javier de Luis;**
**Nadia Milleron and Michael Stumo;**
**Chris Moore;**
**Paul Njoroge;**
**Yuke Meiske Pelealu;**
**John Karanja Quindos;**

These victims' representatives listed above were represented by legal counsel Paul G. Cassell et al. in the court below.

And in addition:

**Rini Soegiyono;**
**Dayinta Anggana;**
**Helda Aprilia;**
**Serly Oktaviani;**
**Wilson Sandi;**
**Hendrarti Hendraningrum;**
**Dody Widodo;**
**Myrna Juliasari;**
**Merdian Agustin;**
**Adhitya Wirawan;**
**M. Sholekhudin Zuhri;**
**Siska Ong;**
**Wenny Sia Wijaya;**
**Suharto;**
**Rohmiyatun;**
**Sri Umi Anggraini;**
**Permana Anggrimulja.**

These victims' representatives listed above were represented by legal counsel Sanjiv Singh et al. in the court below.

And in addition:

**Sonia Lorenzoni;**

**Maurizio Manfredi;**
**Linda Manfredi.**

These victim representatives listed above were represented by legal counsel Filippo Marchino et al. in the court below.

These families are the petitioners in this case, proceeding as representatives of their family members killed in the crashes.

In addition to the family members identified above, there is a larger group of persons who may be interested in the outcome of this litigation—i.e., **family members who serve as representatives of other victims of the two crashes**. *Cf.* 5th Cir. R. 28.2.1 (allowing certificate of interested persons to include a generic description).

**Counsel for Petitioners:**

**Paul G. Cassell** (lead counsel)
**Robert A. Clifford**
**Tracy A. Brammeier**
**Erin R. Applebaum**
**Warren T. Burns**
**Darren P. Nicholson**
**Kyle Kilpatrick Oxford**
**Chase Hilton**

**Sanjiv N. Singh**

**Filippo Marchino**
**Charles S. Siegel**

**Counsel for Other Crash Victims:**

Counsel have also entered an appearance for other crash victims who did not file the petition at issue. These counsel are:

**Adrian Vuckovich**
**Jason Robert Marlin**

The families bringing this petition have also received amicus support.

**Amicus Senator Ted Cruz:**

United State Senator Ted Cruz from Texas filed an amicus brief in support of petitioners below.

**Counsel for Ted Cruz**

**Nicholas Jon Ganjei**

**Respondent United States**

One respondent is the **United States.** The underlying deferred prosecution and non-prosecution agreements at issue were negotiated by attorneys for the United States Department of Justice, Criminal Division, Fraud Section, and United States Attorney's Office for the Northern District of Texas.

**Counsel for the United States**

**Chad E. Meacham**
**Alex C. Lewis**
**Allan Jonathan Medina**
**Carlos Antonio Lopez**
**Cory E. Jacobs**
**Jerrob Duffy**
**Lorinda I. Laryea**
**Michael T. O'Neill**
**Scott Philip Armstrong**
**Sean P. Tonolli**
**Daniel S. Kahn**
**William Connor Winn**
**Alex Lewis**
**Jeremy Raymond Sanders**
**Nancy E. Larson**
**Glenn Leon**

**Movant Erin Nealy Cox**

**Erin Nealy Cox** filed a motion below.

**Counsel for Erin Nealy Cox**

**Marianne Auld** was counsel for Ms. Cox below**.**

**Respondent The Boeing Company**

Another Respondent is **The Boeing Company.** The Boeing Company has no parent corporations and is publicly traded on the NYSE (BA). However, as of December 31, 2012, State Street Corporation, a publicly held company whose subsidiary, State Street Bank and Trust Company, acts as trustee of the Boeing Company Employee Savings Plan Master Trust, has a beneficial ownership of 10% or more of the outstanding stock of The Boeing Company.

**Counsel for The Boeing Company**

In the district court, Boeing has been represented by lawyers from (among other firms) Kirkland & Ellis and McGuireWoods LLP. Boeing's lawyers have been:

> **Richard B. Roper, III**
> **Benjamin L. Hatch**
> **Brandon M. Santos**
> **Elissa N. Baur**
> **Craig S. Primis**
> **Ian Brinton Hatch**
> **Jeremy A. Fielding**
> **Mark Filip**
> **Patrick Haney**
> **Richard Cullen**
> **John R. Lausch, Jr.**
> **Michael P. Heiskell**
> **Ralph N. Dado, III**
> **C. Harker Rhodes**

**Movant Polskie Linie Lotnicze Lot S.A.**

Polish Airlines, legally incorporated as Polskie Linie Lotnicze LOT S.A. is wholly owned by Polish Aviation Group (Polish: Polska Grupa Lotnicza S. A.), a Polish state-owned holding company. It filed a motion in the case below and pursued relief in this Court earlier.

**Counsel for LOT**

**Anthony U. Battista**
**Evan Kwarta**
**Jeffrey W. Hellberg**
**Colin Patrick Benton**
**Mary Dow**
**David J. Drez, III**
**Diana Gurfel Shapiro**

**Movant Smartwings A.S.**

Smartwings, A.S. filed a motion in the case below and pursued relief in this Court earlier. It is a European-based airline with its headquarters in the Czech Republic.

**Counsel for Smartwings A.S.**

**David M. Schoeggl**
**Jeffrey Richard Gilmore**
**Katherine A. Staton**
**Katie D. Bass**
**Callie A. Castillo**

**Anthony P. Keyter** has also been a pro se litigant in this matter.

These petitioners have previously been to the Fifth Circuit on an earlier assertion of this mandamus petition. *In re Ryan*, No. 23-10168.

In that case, petitioners received amicus support from the **National Crime Victim Law Institute.**

Counsel for NCVLI was **Margaret Ann Garvin**.

LOT was also a petitioner in the earlier Circuit proceeding, represented by counsel listed above.

In response to the earlier mandamus petition, the United States and Boeing filed oppositions. The United States was represented by counsel listed above.

In this Court, Boeing was represented (in addition to attorneys listed above) by attorneys from Clement and Murphy, specifically:

**Paul D. Clement**
**Mariel A. Brookins**

**Respondent U.S. District Court for the Northern District of Texas**

Because this is a mandamus petition filed under the Crime Victims' Rights Act, the United States District Court for the Northern District of Texas (O'Connor, J.) is technically a nominal respondent.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In view of the importance of the issues this petition presents to the proper administration of the Crime Victims' Rights Act, 18 U.S.C. § 3711, and Rule 48(a) of the Federal Rules of Criminal Procedure, petitioners request oral argument.

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT** ................................................................................ i

**STATEMENT REGARDING ORAL ARGUMENT** ...................................... viii

**TABLE OF CONTENTS**................................................................................ ix

**TABLE OF AUTHORITIES** ........................................................................ xi

**STATEMENT OF THE RELIEF SOUGHT** ................................................ 3

**ISSUES PRESENTED**.................................................................................. 3

**FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED** ....... 4

    **I.**    **Boeing's Conspiracy and the Government's Deferred Prosecution Agreement.** ................................................................... 4

    **II.**   **Boeing Breaches its DPA Obligations and the District Court Rejects a Proposed Plea Bargain to Resolve the Case.** .................. 6

    **III.**  **The Government Negotiates an NPA With Boeing to Resolve the Case Without Disclosing Important Features to the Victims' Families.** ........................................................................... 7

    **IV.**  **The Government Executes a Binding NPA Containing a No-Further-Prosecution Provision and Unenforceable Statute-of-Limitations Waiver.** ...................................................................... 9

    **V.**   **The District Court Grants the Government's Motion to Dismiss Without Directly Addressing the Families' CVRA Arguments**....................................................................................... 10

**STANDARD OF REVIEW** ............................................................................ 13

**STATEMENT OF THE REASONS WHY THE WRIT SHOULD ISSUE**..... 13

    **I.**    **The Government Violated the Victims' Families' CVRA Rights to Reasonably Confer and to Be Treated with Fairness.** .......................................................................................... 14

**A. The Government Failed to Confer—and Even Misled the Families—About the NPA's No-Further-Prosecution Provision.** ................................................................... 15

**B. The Government Failed to Confer—and Even Misled the Families—About the Sham Dismissal that Was Ostensibly "Without Prejudice."** .............................................. 20

**C. The Proper Remedy for the Government's CVRA Violations is to Reverse the District Court's Approval of the Motion to Dismiss…………………………………………………… …23**

**II.    The District Court Failed to Protect the Clear and Manifest Public Interest by Approving Dismissal of the Deadliest Corporate Crime in U.S. History.** ................................................. 24

**A.  The District Court Failed to Make a Public Interest Assessment.** ................................................................. 24

**B.  The Record in this Case Demonstrates that Dismissal Was Clearly Contrary to the Manifest Public Interest.** ................. 28

**CONCLUSION** ....................................................................... 32

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** .............................. 34

**CERTIFICATE OF SERVICE** ........................................................ 35

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chardon v. Fumero Soto*, 462 U.S. 650 (1983) ...................................................... 22

*Doe 1 v. United States*, 359 F. Supp. 3d 1201 (S.D. Fla. 2019) .............................. 19

*In re Presto*, 358 B.R. 290 (Bankr. S.D. Tex. 2006) ............................................... 17

*In re Ryan*, No. 23-10168, 88 F.4th 614 (5th Cir. 2023) ................................. passim

*In re Wild*, 955 F.3d 1196 (11th Cir. 2020), *on reh'g en banc*, 994 F.3d 1244 (11th Cir. 2021) ............................................................................................................ 19

*Rinaldi v. United States*, 434 U.S. 22 (1977) ......................................................... 26

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975) ........................................... 27

*United States v. Garcia-Valenzuela*, 232 F.3d 1003(9th Cir. 2000) ....................... 25

*United States v. Lytle*, 658 F. Supp. 1321, 1324–25 (N.D. Ill. 1987) ..................... 22

*United States v. Romero*, 360 F.3d 1248 (10th Cir. 2004) ..................................... 25

*United States v. Salinas*, 693 F.2d 348 (5th Cir. 1982) .......................................... 27

*United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988) ......................................... 27

**Statutes**

18 U.S.C. § 3282 ...................................................................................................... 21

18 U.S.C. § 3288 ...................................................................................................... 22

18 U.S.C. § 3771(a)(5) ................................................................................. 15, 17, 18

18 U.S.C. § 3771(a)(8) ....................................................................................... 15, 19

18 U.S.C. § 3771(b)(1) ............................................................................................. 23

18 U.S.C. § 3771(d)(3) .......................................................................................... 1, 13

18 U.S.C. § 3771(e)(2)(B) ........................................................................................ 15

28 U.S.C. § 1651 ........................................................................................................ 1

**Other Authorities**

150 Cong. Rec. 7303 (Apr. 22, 2004) ...................................................................... 19

150 Cong. Rec. S4260-01, S4268, 2004 WL 867940 (Apr. 22, 2024) ................... 15

Bryan A. Garner, Black's Law Dictionary 360 (10th ed. 2014) ............................. 17

Merriam Webster's Collegiate Dictionary 260 (11th ed. 2006) .............................. 17

Thomas Ward Frampton, Why Do Rule 48(a) Dismissals Require "Leave of Court"?, 73 Stan L. Rev. Online 28, 32–37 (2020) ............................................ 26

**Rules**

Fed. R. Crim. P. 48(a) .................................................................................... 3, 4, 8, 9

**TO THE HONORABLE COURT OF APPEALS:**

Petitioners, Ms. Naoise Connolly Ryan, et al. (hereinafter "victims' families" or "families"), respectfully submit this Petition for a Writ of Mandamus Under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3), as well as under the All Writs Act, 28 U.S.C. § 1651.

A year-and-half ago, many of the same victims' families filing this petition came to this Court in the same underlying criminal case—seeking enforcement of their CVRA rights and justice for Boeing criminally killing hundreds. *See In re Ryan*, No. 23-10168, 88 F.4th 614 (5th Cir. 2023). Following oral argument, this Court denied their petition as "premature," explaining that if and when "judicial approval is sought to resolve the instant case, the district court has an ongoing obligation to uphold the public interest and apply the CVRA." *Id.* at 627.

Last week, the district court made its decision on resolving the charge below, approving the Government's motion to dismiss the pending conspiracy charge against Boeing. The district court's decision essentially confirmed this Court's prophetic fear that this case's "ultimate outcome *as approved by [a] federal court*, means no company, and no executive and no employee, ends up convicted of any crime, despite the Government and Boeing's … agreement about criminal wrongdoing leading, the district court has found, to the deaths of 346 crash victims." 88 F.4th at 627 (emphasis in original).

Now that the issues are no longer "premature," this Court should intervene to protect both the victims' families' CVRA rights and the broader public interest. In granting dismissal, the district court failed to protect the families' CVRA rights, including their rights to reasonably confer and to be treated with fairness. The Government's alleged "conferral" conference calls with the victims' families were perfunctory exercises—lacking in any actual substantive conferring and hiding from the families critical features about the dismissal. Because of these unaddressed CVRA violations, this Court should reverse the district court.

This Court should also reverse because the district court misunderstood this Court's precedents regarding the need to protect the public interest when reviewing dismissal motions. The district court seemed to construe this Court's precedents as requiring it to approve the Government's motion to dismiss so long as the prosecutors had "not acted with bad faith" and had "given more than mere conclusory reasons" for the dismissal." Op. at 9.[1] But this parsimonious reading ignored this Court's prior instructions in this very case—that under "Supreme Court and prior Fifth Circuit precedent … district judges are empowered to deny dismissal when clearly contrary to manifest public interest …" and that thus district judges will "vigilantly … enforce the public interest." *Ryan*, 88 F.4th at 626-27 (internal citation omitted).

---

[1] The opinion (Op.) below is attached to the petition as Attachment 1.

Here, the district court found that the victims' families provided "compelling" reasons to deny the dismissal. *Id.* at 8. And yet, the district court reluctantly concluded that it was somehow required to give its approval to an agreement that "fails to secure the necessary accountability to ensure the safety of the flying public." Op at 6. In other words, the district court thought it had no choice but to lend its imprimatur to the dismissal. The district court was wrong. It had the power to reject the stunning injustice inherent in simply dismissing the charge for "the deadliest corporate crime in U.S. history." Appx. 605, 705. To protect the manifest public interest, this Court should reverse.

## STATEMENT OF THE RELIEF SOUGHT

The families ask this Court to overturn the district court's decision granting the Government's motion to dismiss, to direct the district court to enforce their CVRA rights to confer and be treated with fairness in connection with the dismissal motion, to void the NPA, to hold that in deciding whether to approve a motion to dismiss under Fed. R. Crim. P. 48(a) a district court must assess the public interest, and to remand the case for further proceedings consistent with these conclusions.

## ISSUES PRESENTED

1. Did the district court err in concluding that the Government complied with the CVRA, where the Government did not give the victims' families an opportunity to reasonably confer about the important aspects of the dismissal motion and treated

the victims' families unfairly by hiding important information about the dismissal motion's effects?

2. Did the district court err when it concluded that it need not make a full and independent assessment of "public interest" in deciding whether to grant the Government's motion to dismiss under Fed. R. Crim. P. 48(a)?

## FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

This Court is already familiar with some of the background surrounding this case. *See Ryan*, 88 F.4th at 618-21. And in their related petition filed contemporaneously with this one, the victims' families recount the more recent relevant facts. *See* Reassertion of an Earlier, Premature Petition for a Writ of Mandamus under the CVRA at 3-15, *In re Ryan*, No. CA5-25-11253 (filed 5th Cir. Nov. 13, 2025) (hereinafter "DPA Petition"). To reduce duplicative briefing, in this petition the victims' families simply adopt and incorporate by reference that briefing about the general facts surrounding this case, while also setting out here the specific facts necessary to understand the issues this petition presents.

## I. Boeing's Conspiracy and the Government's Deferred Prosecution Agreement.

In October 2018 and March 2019, two new Boeing 737 MAX aircraft crashed because of a new software system Boeing had added into the planes without appropriate disclosure to the pilots. All 346 passengers and crew aboard those two flights died. Appx. 458-59.

4

After the second crash, the U.S. Department of Justice began investigating Boeing for concealing safety-related information about the 737 MAX from safety regulators. The Department's criminal investigation ultimately revealed that, while developing the 737 MAX, Boeing and its employees conspired to deliberately mislead the Federal Aviation Administration (FAA) about the safety of the 737 MAX—to avoid the FAA imposing costly new pilot training requirements. Appx. 459. Boeing's yearslong conspiracy was designed to maximize the company's profits and reached the company's highest levels. Appx. 497-505.

Ultimately, to resolve Boeing's criminal liability, the Justice Department and Boeing secretly negotiated an extraordinarily generous deferred prosecution agreement (DPA). After the DPA was filed, the victims' families challenged the agreement, proved that they represented victims of Boeing's crime, and secured a district court ruling that the Government had violated the CVRA by concealing the DPA from them. Appx. 472. But after further briefing and argument, in February 2023, the district court issued an order denying any enforcement of the victims' families' CVRA rights. The district court concluded it was powerless to award any remedy. Appx. 609-706.

The victims' families then filed in this Court a timely petition for review of the district court's decision. After briefing and argument, in December 2023, this Court held that the district court had an "obligation to apply the CVRA." *In re Ryan*,

88 F.4th at 626. Nonetheless, this Court denied the families any relief because "mandamus intercession [was] premature." *Id.* at 627. This Court then presciently explained how things might unfold in the future: "If a sought-for final stage is a Government motion to dismiss, we are confident … that the district court will assess the public interest according to caselaw as well as the CVRA, including violations already admitted to, as well as any other circumstances brought to its attention by the victims' families." *Id.* at 627.

## II. Boeing Breaches its DPA Obligations and the District Court Rejects a Proposed Plea Bargain to Resolve the Case.

Following this Court's decision, the DPA's three-year term was set to expire less than a month later, on January 7, 2024. But two days before that expiration, on January 5, 2024, a mid-cabin door plug on Alaska Airlines Flight 1282 suddenly detached from the Boeing 737 MAX 9, exposing Boeing's failure to follow its DPA obligations. In light of these and numerous other dangerous failures by Boeing, in May 2024, the Justice Department determined that Boeing had breached its obligations under various DPA provisions. *See* ECF No. 199 at 1.[2] Further negotiations between the Government and Boeing produced a proposed plea—and objections to the plea from the victims' families. And in December 2024, the district

---

[2] References in this petition to Electronic Case Filing (ECF) docket numbers are to the district court docket below.

court rejected the proposed plea. The district held that, for various reasons, the agreement was not in the public interest. Appx. 801-12.

### III. The Government Negotiates an NPA With Boeing to Resolve the Case Without Disclosing Important Features to the Victims' Families.

In late 2024 and the first half of 2025, the Government debated how to proceed with its prosecution of Boeing. During its deliberations, the Government held two video conference calls with the victims' families. But in neither of those calls did the Government disclose the most critical features of the NPA that it would later use to resolve the case.

On December 11, 2024, the Government held a video conference call with about ninety victims' families about next steps in the case. The family members who spoke consistently said that the Government should take Boeing to trial for its deadly crime. ECF No. 318-1 at 6.[3]

Following that session, the Government obtained multiple extensions for reporting back to the district court how it intended to proceed. Months later, and with a new prosecution team in place, on May 16, 2025, the Government held another video conference call with the families. During this call, the Government told the families that it was considering an NPA with Boeing, which could lead to a motion

---

[3] During the session, the Government also refused to state directly whether it had disclosed all relevant information to the district court about the case. *See* ECF No. 318-1 at 6-10.

to dismiss. It is undisputed that the victims' families and their counsel understood that the Government was describing the normal sequence of events for a case involving an already-filed criminal charge. *See* ECF No. 318-1 at 13-16.[4] Under this settled sequence, if the Government is considering dismissing a previously filed criminal charge, it first files a motion to dismiss. Such a motion requires "leave of Court." *See* Fed. R. Crim. P. 48(a). The Government then awaits the district court's ruling on the motion before finally deciding whether to enter a binding agreement with the criminal defendant not to prosecute. *See* ECF No. 318-1 at 13.

The families' counsel's understanding about this normal sequence of events was reinforced during the conference call when the Government referred to "the legal authority a judge has to deny the government's motion to dismiss." *Id.* at 14. Counsel's understanding was that the Government would give the Court an opportunity to rule on the motion to dismiss before executing, for example, a non-prosecution agreement with Boeing. *Id.*

Later during the conference call, victims' counsel asked the Government whether it would "support the victim's families' right to be heard in front of Judge O'Connor at that time [when he was considering whether to grant the Government's

---

[4] ECF No. 318-1 is a sworn declaration by lead counsel for the victims' families filing this petition (Paul Cassell of the University of Utah College of Law). The Government did not contest counsel's declaration. And the district court did not question any part of the declaration in its ruling. Thus, counsel's statements stand as part of the unchallenged record below.

motion to dismiss], so he can at least hear our case on this?" *Id*. In response, the Government stated: "Yes, we support the victims' families' right to be heard in front of Judge O'Connor." *Id.*

During the call, the Government also told the victims' families that, under any NPA it reached, the Government would be free to "refile the charge and prosecute the case" if Boeing violated its NPA obligations. *Id.* at 16. Victims' counsel understood that the Government intended to include in any NPA standard language ensuring that, in the event of a breach by Boeing, the statute of limitations would not prevent the Government from "refil[ing] the charge" and "prosecut[ing]" its case. *Id.* (quoting Government representations made in May 16 Transcript at 7).

## IV.    The Government Executes a Binding NPA Containing a No-Further-Prosecution Provision and Unenforceable Statute-of-Limitations Waiver.

About two weeks after this conference call, on May 29, 2025, the Government filed a motion to dismiss the pending charge under Fed. R. Crim. P. 48(a). Included as an attachment to the filing was a binding, already-executed NPA—signed by both the Government and Boeing. The NPA contained two critical features that were contrary to what the Government had previously told the families.

First, the NPA contained a "no-further-prosecution-provision" requiring that, even if the district court were to deny the motion to dismiss, the Government would not further prosecute Boeing. NPA ¶ 22, found at Appx. 847-48. This unprecedented provision shocked the victims' families and their counsel. As their experienced legal

counsel explained in an uncontradicted, sworn affidavit, "it was a clear and substantial deviation from normal criminal justice processes for the Justice Department to enter into a binding non-prosecution agreement with a defendant in a case involving a pending criminal charge before the Court ruled on a motion to dismiss that charge under Rule 48(a)." ECF No. 318-1 at 15.

Second, the NPA failed to contain standard enforcement language through which Boeing agreed that, in the event it breached the agreement, it specifically waived any statute of limitations defenses. *See* ECF No. 318-1 at 17. Instead of a direct waiver, the NPA provided that, upon a Government finding of breach, the Government could only prosecute Boeing for conduct "that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement …." NPA ¶ 22, found at Appx. 845-46. As explained below, this hedged language did not prevent the statute of limitations from lapsing as to Boeing's conspiracy crime. Thus, any further prosecution of Boeing for its crime was permanently precluded. *See* Part I.B, *infra*. If the victims' families' counsel had been made aware of this chary language in advance, counsel would have "strenuously raised [an] objection on behalf of [the victims' families] …." ECF No. 318-1 at 17-18.

## V.     The District Court Grants the Government's Motion to Dismiss Without Directly Addressing the Families' CVRA Arguments.

After the Government filed its motion to dismiss, the victims' families objected, raising the issues they present in this petition. *See, e.g.,* Dkt. Nos. 318, 321

& 340. The families argued that the dismissal would be clearly contrary to the manifest public interest for multiple reasons, including the Government's efforts to short-circuit Rule 48(a)'s judicial-review requirement and to orchestrate a sham dismissal purportedly "without prejudice." The families also argued that the Government had violated their CVRA rights to confer and be treated with fairness by concealing critical features of the NPA from them. *See, e.g.,* ECF No. 318; ECF No., 340.

On September 3, 2025, the District Court held a hearing to consider the families' objections. Appx. 896-1081. Two months later, on November 6, 2025, the district court granted the Government's motion to dismiss. The district court held that the Government had complied with its CVRA requirements. Op. at 8-9. In two, conclusory paragraphs, the district court observed that the Government had conferred about "the framework of the then-potential NPA" in its May 16 conference call. Without analyzing what actually happened during the call, the district court summarily held that "[o]n this record, the Government has satisfied its obligations under the CVRA." Op. at 9.

The district court also concluded—reluctantly—that it had no choice but to grant the Government's motion to dismiss. The district court noted the Government's claims in its motion to dismiss that the underlying NPA "secure[d] meaningful accountability, deliver[ed] substantial and immediate public benefits, and [brought]

finality to a difficult and complex case whose outcome would otherwise be uncertain." *Id.* at 4 (citing ECF No. 312). The district court also acknowledged that the victims' families contested these assertions and specifically found that "some [of the families'] arguments are persuasive." Op. at 5. Notably, the district court pointed to the absence of an independent monitor for Boeing in the NPA, finding that the families "are correct that this agreement fails to secure the necessary accountability to ensure the safety of the flying public." *Id.* at 6. The district court also rejected the Government's claim that, without an agreement with Boeing, the case's outcome was uncertain. The district court described this argument as "unserious" because the Government had already secured "a confession from Boeing, signed by the CEO and Chief Legal Officer, admitting to all the elements of the conspiracy charge against it …." *Id.* In sum, the district court concluded that the families' "argument that the Government's agreement in this case is contrary to public interest" was "compelling." Op. at 8.

Nonetheless, the district court ruled that the victims' families' compelling argument could not "justify denying leave to dismiss under Rule 48(a)." *Id.* As the district court understood this Court's precedents, they allow a trial court to reject a Government dismissal motion only where the facts show a "betrayal of the public

interest." Op. at 8 (citing *Cowan*, 524 F.2d 504, 514 (5th Cir. 1975)).[5] As the district court read the caselaw, so long as "the Government has not acted with bad faith" and "has given more than mere conclusory reasons for its dismissal," a district court is obligated to grant dismissal. *Id.* at 9-10.

The victims' families now file this timely petition for review, as the CVRA provides. 18 U.S.C. § 3771(d)(3).

## STANDARD OF REVIEW

Because the victims' families properly presented their claims below, they are entitled to ordinary appellate review here—i.e., to review of the district court's "legal conclusions de novo, its factual conclusions for clear error, and its discretionary judgments for abuse of discretion." *Ryan*, 88 F.4th 614, 621 (5th Cir. 2023). Because this petition presents purely legal issues, the victims' families are entitled to de novo review.

## STATEMENT OF THE REASONS WHY THE WRIT SHOULD ISSUE

In the proceedings below, the Government violated the CVRA by failing to disclose to the families two of the NPA's most important features: its unprecedented no-further-prosecution provision and its sham statute of limitations provision. And the Government misled the victims' families about how the dismissal would operate.

---

[5] As noted above, this district court also recognized that a separate and independent ground for denying dismissal would be a violation of CVRA rights. Op. at 8-9.

Yet despite receiving clear evidence of these facts, the district court did nothing to enforce the victims' families' CVRA rights to reasonably confer and be treated fairly. This Court should reverse the district court because it failed to protect the families' CVRA rights in the process leading up to the dismissal motion.

Once the Government sought leave to dismiss, the district court also failed to follow this Court's earlier instructions to assess the public interest. In its earlier decision in this case, this Court directed that, in evaluating any Government motion to dismiss, the district court should "*assess the public interest* according to caselaw as well as the CVRA, including violations already admitted to, as well as any other circumstances brought to its attention by the victims' families." 88 F.4th at 627 (emphasis added). The district court misread this Court's decisions and improperly concluded that it was barred from making an independent determination of whether the proposed dismissal was clearly contrary to the public interest. This Court should reverse the district court for this error of law as well.

## I. The Government Violated the Victims' Families' CVRA Rights to Reasonably Confer and to Be Treated with Fairness.

The CVRA extends rights to crime victims—and in cases where the victims are deceased, their representatives. *See* 18 U.S.C. § 3771(e)(2)(B). The families filing this petition represent "crime victims," as both the district court and this Court have previously held. *See* Appx. 472; *Ryan*, 88 F.4th at 626-27. Accordingly, the families were and are entitled to "[t]he reasonable right to confer with the attorney

14

for the Government in the case" and "to be treated with fairness …." 18 U.S.C. § 3771(a)(5) & (8). In its conferral with the victims' families, the Government violated these CVRA rights by deceptively describing two of the most important parts of the motion to dismiss: that the Government was entering a binding, no-further-prosecution commitment and that the Government's dismissal would not truly be "without prejudice."

### A. The Government Failed to Confer—and Even Misled the Families— About the NPA's No-Further-Prosecution Provision.

The CVRA promises crime victims "[t]he reasonable right to confer" with government prosecutors. 18 U.S.C. § 3771(a)(5). The CVRA's drafters explained that this right gives victims an opportunity "to confer with the prosecutor concerning a variety of matters and proceedings…. This right is intended to be expansive." 150 CONG. REC. S4260-01, S4268, 2004 WL 867940 (Apr. 22, 2024) (statement of CVRA co-sponsor Sen. Feinstein).

In December 2024, following the district court's rejection of Boeing's proposed guilty plea agreement, the Government presumably recognized the need to confer. So it held two perfunctory video conference calls with the families: the first one, on December 11, 2024, during which the families who spoke asked the

Government to prosecute Boeing; and then a second one, on May 16, 2025.[6] During the May 16th call, the Government said that it was considering an NPA, but did not disclose its plan to enter into a binding agreement blocking any further prosecution of Boeing even before the district court had ruled on the dismissal motion. To the contrary, the Government implied that it would follow the normal sequence of federal criminal proceedings. The Government said that the families' attorneys could "talk to [the families] about the legal authority a judge has to deny the government's motion to dismiss …." ECF No. 318-1, May 16 Transcript at 7. And when one of the families' attorneys specifically asked about the Government's dismissal motion possibly "heading to litigation," the Government said that it would "support the victims' families right to be heard in front of Judge O'Connor." *Id.* at 26.

Against this backdrop, it is easy to understand why the victims' families were shocked when the Government later unveiled its NPA and revealed that it had already formally agreed not to further prosecute Boeing—even before the district court had decided whether to grant leave to dismiss. *See* ECF No. 318-1 at 12-16. By deceptively creating the impression that it would proceed through the normal course of judicial review, the Government deprived the victims' families of their promised CVRA "reasonable right to confer" with the prosecutors. *See id.* at 15-16; 18 U.S.C.

---

[6] Transcripts of the two sessions are found in ECF No. 318-1 at Ex. 1 and Ex. 5, respectively. These transcripts are indisputably accurate, so the issues regarding the reasonableness of the Government's conferral are purely legal.

§ 3771(a)(5).[7]

The term "confer" has a well settled meaning of "to compare views …." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 260 (11th ed. 2006); *see also* BRYAN A. GARNER, BLACK'S LAW DICTIONARY 360 (10th ed. 2014) (defining "confer" as "[t]o bring together for sake of scrutiny or comparison …."); *In re Presto*, 358 B.R. 290, 293 (Bankr. S.D. Tex. 2006) (noting that conferral means "counsel must 'compare views' and … attempt to resolve their differing views before coming to court"). Indeed, because the no-further-prosecution provision had already gone into effect before the victims' families knew about it, the provision rendered the families' later objections to granting the motion to dismiss essentially meaningless: for all practical purposes, the Government had already "dismissed" the charge by promising Boeing it would not be further prosecuted. *See* ECF No. 318-1 at 16. This *fait accompli* may explain why the district court, after acknowledging that the victims' families had properly presented the no-further-prosecution issue (Op. at 4), never discussed it all.

To be sure, complicated line-drawing issues can arise about the extent to

---

[7] The district court cited the opinion of a single lawyer for some of the victims' families, who offered his view that "there's been reasonable conferral, to say otherwise would be unfair." Op. at 9. This lawyer's personal opinion is irrelevant to this Court's legal assessment of whether conferral was reasonable. And it is also unclear whether this one attorney or his firm may have significant financial reasons for wanting to see the current dismissal confirmed.

which the CVRA requires prosecutors to confer.[8] But the CVRA handles these issues by requiring that prosecutors only need extend to victims and their families the "*reasonable* right to confer." 18 U.S.C. § 3771(a)(5) (emphasis added). Here, it was plainly not "reasonable" for the Government to hide from the victims' families one of the NPA's most important—and, indeed, historically unprecedented—provisions.

In the proceedings below, the victims' families repeatedly described the Government's agree-not-to-prosecute-first-then-ask-the-Court-later maneuver as "unprecedented." *See, e.g.,* ECF No. 340 at 3 (collecting numerous references to the Government's "unprecedented" action). Indeed, in oral argument on the dismissal motion, victims' counsel's first words were: "Make no mistake, this is an unprecedented ask of this Court." Appx. 994. The Government's failure to reveal that it was essentially contracting around the Rule 48(a) judicial review process prevented the families from exercising their CVRA right to reasonably confer about the Government's newly deployed stratagem.

In addition to violating the families' right to confer, by concealing its trick, the Government violated the families' right to be "treated with fairness." 18 U.S.C.

---

[8] Of course, one way for the Government to have conferred would have been for the Government to have simply provided to the families a draft copy of the proposed NPA. Instead, on the conference call, the Government read a lengthy, prepared statement describing what NPAs typically do. *Cf.* May 16 Transcript at 18 (family member stating that the Government's statement about a possible dismissal "was very cleverly camouflaging a whole pile of heavy language which was never intended for us to understand …, right?").

§ 3771(a)(8). In its conference call with the families, the Government deceptively suggested that it would follow the same practice it has followed for more than eighty years. *See* ECF No. 318-1 at 14-16. The Government never disputed that the families' and their counsel reasonably understood the Government to be describing an NPA predicated on initial judicial review of the motion to dismiss. *See id.* As a result of the Government's ruse, the victims' families lost any opportunity to confer with the Government about its extraordinary departure from Rule 48(a)'s traditional procedures. *See id.* at 15-16.

At a minimum, under the CVRA, "[w]hen the Government gives information to victims, it cannot be misleading*." Doe 1 v. United States*, 359 F.Supp.3d 1201, 1219 (S.D. Fla. 2019), *mandamus denied sub nom.*, *In re Wild*, 955 F.3d 1196 (11th Cir. 2020), *on reh'g en banc*, 994 F.3d 1244 (11th Cir. 2021). As applied in this case, the CVRA's right "to be treated with fairness" must at least mean that the Department's prosecutors will be straight shooters when describing how they were maneuvering to give Boeing a pre-arranged pass for killing grieving families' loved ones—even before the district court had ruled. *See* 150 CONG. REC. 7303 (Apr. 22, 2004) (statement of Sen. Kyl) (describing the CVRA's right to fairness in broad terms).

This Court should reverse the district court for failing to enforce the victims' families' CVRA right to fairness. Reversal is required not because the district court's

analysis of the issue is unpersuasive but rather because it is nonexistent. The district court simply concluded that, "[o]n this record, the Government satisfied its obligations under the CVRA." Op. at 9. The district court failed to even cite the CVRA's right to fairness, much less establish that the Government had honored it.

### B. The Government Failed to Confer—and Even Misled the Families—About the Sham Dismissal that Was Ostensibly "Without Prejudice."

This Court should also reverse the district court because it allowed the Government to orchestrate a sham dismissal "without prejudice"—and to mislead the victims' families about what it was doing. Here again, the district court failed to even analyze this important issue.

During the May 16th conference call, the Government told the victims' families that, "if the Department entered an NPA," it would contain a provision that, if Boeing breached, then "the Department could refile the charge and prosecute the case, not withstanding the passage of time." *See* ECF No. 318-1 at 16 (citing May 16 Transcript at 7). Typically in an NPA, the Justice Department simply includes standard language along these lines. *See* ECF No. 318-1 at 16-17. But Boeing's NPA does *not* contain such a straightforward provision. Instead, Boeing only agrees that, if it breaches, then it can only be prosecuted for conduct that is "not time-barred." NPA, ¶ 16, Appx. 845-46. Of course, this language implicitly acknowledges that some of Boeing conduct is, in fact, time-barred from further prosecution. In fact, *all*

of Boeing's relevant conduct is time-barred, rendering the NPA unenforceable.

In their briefing below, the victims' families explained how the five-year statute of limitations in this case has already run. *See, e.g.,* ECF No. 340 at 16-19. Specifically, Boeing's conspiracy crime extended through to March 13, 2019. While that crime would have become time-barred five years later, Boeing's breach of its DPA obligations allowed the Government to extend that term for one-year past the end of the DPA's term—from January 7, 2024, to January 7, 2025. Of course, time has marched past that last date—and if the district court's dismissal of the charge is upheld, then Boeing can never again be prosecuted. *See* ECF No. 340 at 16-19.

In its briefing below, the Government agreed with the victims' families about how the statute of limitations generally operated here, with one exception: the Government claimed that, on January 7, 2021, its filing of the Criminal Information against Boeing somehow "stopped the clock" on the statute of limitations. *See* ECF No. 334 at 11. But as the Government must know, its filing of a criminal charge does not permanently stop the clock from running with respect to determining the timeliness of a later refiling of that same charge.

The relevant statute of limitations—18 U.S.C. § 3282—allows a prosecution only if "the information is instituted within five years next after such offense shall have been committed." In the district court, the Government cited cases stating that, after an "information is instituted[,] … the statute of limitations is *tolled* for the

charges the information alleges …." *See. e.g.,* ECF No. 334 at 10 (citing *United States v. Webster*, 127 F.4th 318, 322 (11th Cir. 2025) (emphasis added)). But the term "toll" can have different meanings, specifically a stop-the-clock meaning or a suspend-while-a-condition-is-in-effect meaning. *See Chardon v. Fumero Soto*, 462 U.S. 650, 652 n.1 (1983) (offering different meanings for "tolling" and "tolling effect"). Here, the statute of limitation only provides for a suspension while a condition is in effect.

This commonsense reading of the statute of limitations is confirmed by the adjacent "grace period" statute, which permits the Government to re-file a charge within six months after a felony charge "is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired." 18 U.S.C. § 3288. As one district court explained in rejecting the Government's stop-the-clock "tolling" theory, if "the return of every indictment automatically 'tolls' the statute of limitations in the sense of suspending its operation during the entire pendency of that indictment," then nonsensically there "could *never* be a dismissal after the period prescribed by the applicable statute of limitations has expired." *United States v. Lytle,* 658 F. Supp. 1321, 1324–25 (N.D. Ill. 1987).

So much for the Government's argument. But what about Boeing's? Boeing apparently agreed with the victims' families! Given the opportunity to explain its statute-of-limitations position, Boeing said … well … nothing. *See* Appx. 1009; *see*

*also* ECF No. 340 at 18. It would have been a simple matter for Boeing to state it agreed with the Government's interpretation. Boeing's deafening silence on the issue essentially confirmed the families' position below—and troublingly suggests that a "meeting of the minds" does not currently exist about the NPA's terms.

And what about the district court? While the district court acknowledged that the families had raised this important issue, Op. at 4, it never discussed the issue at all. Because the NPA failed to extend the statute of limitations, the district court participated in a sham when it gave its "imprimatur" (*Ryan*, 88 F.4th at 624) to the Government's motion to dismiss—ostensibly "without prejudice."

### C.     The Proper Remedy for the Government's CVRA Violations is to Reverse the District Court's Approval of the Motion to Dismiss.

The CVRA commands that a district court "shall ensure" that the victims' families are "afforded the rights described in the [CVRA]." 18 U.S.C. § 3771(b)(1). And as this Court instructed earlier in *Ryan*, a district court "cannot grant leave [to dismiss] unless the Government fulfilled its obligations under the Crime Victims' Rights Act." *Ryan*, 88 F.4th at 627. Here, the Government failed to fulfill its CVRA obligations to reasonably confer and to treat the victims' families with fairness. So the district court's decision granting the motion to dismiss should be reversed under *Ryan*.

In addition, the Court should direct that, on remand, the district court must fully protect the families' CVRA rights. That direction will necessarily require the

district court to void the NPA. The families cannot reasonably confer about, for example, the further prosecution of Boeing if the Government remains bound by the NPA's provision that it cannot further prosecute Boeing. The NPA is void as against public policy, specifically the policies contained in the CVRA's victims' rights provisions as well as the policy of judicial review contained in Rule 48(a). *See Ryan*, 88 F.4th at 629-30 (Clement, J., concurring) (noting that "contracts entered in violation of public policy are void and unenforceable").

## II.    The District Court Failed to Protect the Clear and Manifest Public Interest by Approving Dismissal of the Deadliest Corporate Crime in U.S. History.

While the Government's CVRA violations provide this Court with narrow grounds for reversal, this Court should also reverse because, more broadly, the district court misunderstood this Court's precedents governing judicial review of a Government motion to dismiss. The district court's restrictive construction of these precedents rendered this Court's public-interest review requirement essentially meaningless—and led to the district court erroneously dismissing the deadliest corporate crime in U.S. history despite "compelling" arguments for holding Boeing accountable.

### A.  The District Court Failed to Make a Public Interest Assessment.

The district court held that, so long as the Government had "not acted with bad faith" and had "given more than mere conclusory reasons for its dismissal," it

was required to grant a Government motion to dismiss under Rule 48(a). Op. at 9-10. The district court misread this Court's decisions. This misreading is especially surprising, because it directly conflicts with this Court's instructions in this very case just two years ago.

This Court stated in *Ryan* that "[i]f a sought-for final stage is a Government motion to dismiss, we are confident … that the district court *will assess the public interest* according to caselaw as well as the CVRA, including violations already admitted to, as well as any other circumstances brought to its attention by the victims' families." 88 F.4th at 627 (emphasis added). *Ryan* then cited cases from this Circuit and others specifically authorizing public interest review. *See id.* at 627-28 (citing *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. Unit A 1981) (en banc) (reiterating Supreme Court and prior Fifth Circuit precedent stating that district judges are empowered to deny dismissal when "clearly contrary to manifest public interest"); *United States v. Romero*, 360 F.3d 1248, 1251–52 (10th Cir. 2004) (noting courts may refuse to dismiss charges if dismissal is "clearly contrary to manifest public interest" and discussing Fifth Circuit cases); *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007–08 (9th Cir. 2000) (same)).

This Court in *Ryan* further supported its instructions by citing the one Supreme Court decision to address Rule 48(a)—*Rinaldi v. United States*, 434 U.S. 22 (1977). *Ryan* explained that, while "the Supreme Court indicated that '[t]he

principal object' of the 'leave of court' required for dismissals pursuant to Rule 48(a) was 'to protect a defendant against prosecutorial harassment,' the Court also acknowledged—and expressly left open—courts' use of Rule 48(a) to deny dismissals when 'prompted by considerations clearly contrary to the public interest.'" *Ryan*, 88 F.4th at 628 n.12 (citing *Rinaldi*, 434 U.S. at 29 n.15 (*citing, inter alia, United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)). *Ryan* added that, "with the history of Rule 48 in mind, we have observed that '[i]t seems manifest that the Supreme Court intended to ... vest[ ] in the courts the power and the duty to exercise a discretion for the protection of the public interest,' and have noted that early case law interpreting Rule 48(a) 'supports this theory.'" *Ryan*, 88 F.4th at 628 n.12 (quoting *Cowan*, 524 F.2d at 511). *Ryan* also favorably cited the most comprehensive review of Rule 48(a)'s history—Thomas Ward Frampton's article, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 STAN L. REV. ONLINE 28, 32–37 (2020) (concluding that "the 'principal object' of Rule 48(a)'s 'leave of court' requirement was … to guard against dubious dismissals of criminal cases that would benefit powerful and well-connected defendants").

Rather than follow this Court's instructions to "assess the public interest," *Ryan*, 88 F.4th at 627, the district court thought that older caselaw from this Circuit permitted it "to do no more … than ensure that the prosecutor has acted in good faith motivated by the interest of justice …." Op. at 7 (citing *Cowan* 524 F.2d at 514).

This was wrong. One need only look to the district court's main cited authority—*Cowan*—to find this Court's statement that "[i]t seems manifest that [in adopting Rule 48(a)] the Supreme Court intended to make a significant change in the common law rule by vesting in the courts the power and *the duty* to exercise a discretion for the protection of the public interest." *Cowan*, 524 F.2d at 511 (emphasis added). And *Cowan* held that the district court in that case "was undoubtedly clothed with a discretion to determine whether the dismissal of these charges was clearly contrary to the public interest." *Id.* at 513.[9]

To be sure, *Cowan* went on to overturn the district court's denial of the dismissal motion in that particular case. In *Cowan,* the Government had moved to dismiss felony charges in the Northern District of Texas in exchange for a defendant's guilty plea elsewhere. *Id.* at 506, 514. This Court explained that the exchange was appropriately motivated by such things as "the necessity of obtaining

---

[9] The district court also cited *United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988). But *Welborn*'s only actual holdings concerned procedural requirements for a defendant to object to a dismissal without prejudice. *See id.* at 985 (discussing "the two rules we adopt today"). The district court also cited *United States v. Salinas*, 693 F.2d 348 (5th Cir. 1982). But *Salinas'* narrow holding involved whether the Government's displeasure with the composition of the jury being seated constituted a sufficient basis for dismissal—over the objection of a defendant seeking to protect his individual interests. *See id.* at 353 ("this Court has no choice but to vindicate the purpose of Rule 48(a) to protect the defendant's rights"). As this Court later recognized, any statements in *Salinas* beyond that protect-defendant's-rights conclusion were "dicta." *Wellborn*, 849 F.2d at 985. Thus, these two cases about defendants' interests say little about conducting *public* interest review.

[the defendant's] cooperation under the plea agreement calling for dismissal of the Texas charges." *Id.* at 514. But *Cowan* reached that conclusion only because the record there demonstrated that the prosecutors were acting "in good faith for *substantial* reasons *sufficiently* articulated in the motion to dismiss." *Id.* (emphases added).

### B. The Record in this Case Demonstrates that Dismissal Was Clearly Contrary to the Manifest Public Interest.

In sharp contrast to *Cowan*'s record of "substantial" reasons "sufficiently" articulated, here the record reflects the opposite. To be sure, the district court could properly begin its inquiry by presuming the Government's motion to dismiss was well founded. But here, that presumption was more than adequately rebutted once the district court found that the victims' families' objection that the Government's dismissal motion was "contrary to the public interest" was "*compelling*." Op. at 8 (emphasis added). Perhaps most concerning is the district court's resolution of the high-stakes aviation safety issues presented by Boeing's crime—a crime that killed hundreds and recklessly endangered hundreds more in the populated areas over which the planes flew. After reviewing the record, including the Government's repeated representations about the need to independently monitor Boeing, the district court found that the victims' families were "correct" that the NPA "fails to secure the necessary accountability to ensure the safety of the flying public." *Id.* at 6. Pause to let that chilling statement sink in: in a case involving the deaths of hundreds, the

district court actually believed that this Court's caselaw rendered it powerless to "ensure" the future "safety of the flying public." *Cf. Ryan*, 88 F.4th at 626 ("Public perception and confidence in the criminal justice system assume that when criminal charges are submitted for judicial resolution, the courts *vigilantly* will enforce the public interest" (emphasis added)).

The district court also rejected the Government's spurious claim that the NPA avoided the "uncertainty and litigation risk presented by proceeding to trial." Op. at 6. The district court found the Government's representation was "unserious" (*id.*) because Boeing had already confessed to its deadly crime—a confession signed by Boeing's CEO and Chief Legal Office "admitting to all the elements of the conspiracy charged against it …." *Id.*

While the district court discussed some of the victims' families' "compelling" arguments against dismissal (*id.* at 8), it failed to discuss two of their strongest ones. The district court should have explicitly weighed these powerful arguments as part of its public-interest calculation.

First, the district court's approval of the Government's "unprecedented" no-further-prosecution provision effectively guts Rule 48(a). *See* ECF No. 340 at 1-6. Even before the district court ruled, the Government and Boeing had devised an agreement in which the Government promised not to further prosecute Boeing— even if the district court thereafter denied the motion to dismiss. Never before in

29

Rule 48(a)'s eighty-year history has the Government entered such a preemptive agreement—much less received after-the-fact judicial approval for its ploy. In *Ryan*, this Court recounted that any contractual agreements, such as NPAs, "derogate neither court authority nor statutory rights." 88 F.4th at 625. But if this Court approves the Government's contractual end-run around Rule 48(a), this scheme will no doubt "become the blueprint for all future dismissal motions in federal criminal prosecutions." *See* ECF No. 340 at 4. This disturbing subterfuge alone renders the Government's dismissal motion clearly contrary to manifest public policy—the long-standing public policy provided by Rule 48(a) of judicial review before the Government can terminate a prosecution.

Second, the district court purported to approve dismissing the conspiracy charge against Boeing "without prejudice." Op. at 10. This was a sham. As the families explained at length in their briefing to the district court and reassert here, the Government failed to include in the Boeing NPA standard language extending the statute of limitations. *See* Part I.B., *supra.* And the statute of limitations on Boeing's lethal crime has now expired. *See id.* To put it plainly, Boeing's NPA is toothless, with potentially devastating consequences for what is ultimately at stake in this case: "the safety of the flying public." Op. at 6. At a minimum, it could not be in the public interest for a district court to falsely proclaim on its public docket that a serious criminal charge has been dismissed only "without prejudice" when the

truth is otherwise. And this Court, too, would be lending its "imprimatur" to a charade if it were to now uphold this phony without-prejudice dismissal. *Cf. Ryan*, 88 F.4th at 626 & n.9 ("a criminal prosecution that is submitted to courts to resolve … receives judicial imprimatur," creating "accountability with Article III from start to finish.").

Perhaps the district court did not review all the victims' families' "compelling" arguments against the dismissal (Op. at 8) because of its crabbed conception of the judiciary's proper role. Indeed, the district court frankly stated that it did "not agree" with the families that if "the Government's reasons are unsupported, it may hold that dismissal is clearly contrary to manifest public interest." Op. at 7. If upheld, the district court's submissive approach will render Rule 48(a)'s important leave-of-court requirement a nullity. For the sake of maintaining any semblance of genuine public interest scrutiny for dismissal motions, this Court should reverse.

## CONCLUSION

When this Court reviewed this case earlier, it appropriately worried about what might happen if the "ultimate outcome *as approved by [a] federal court*, means no company, and no executive and no employee, ends up convicted of any crime, despite the Government and Boeing's … agreement about criminal wrongdoing leading, the district court has found, to the deaths of 346 crash victims." 88 F.4th at 627 (emphasis in original). Sadly, unless this Court intervenes now, this startling lack of accountability will be the tragic legacy of this case. And to be clear, this Court too will necessarily lend its "imprimatur" to that injustice, even though the victims' families have indisputably provided "compelling" arguments against dismissing Boeing's prosecution for a crime causing the deaths of hundreds.

Justice for Boeing's victims demands a different outcome—and the law requires one. This Court should grant the victims' families' petition, reverse the district court's decision granting the Government's motion to dismiss, direct the district court to enforce the families' rights to confer and be treated with fairness by (among other things) voiding the NPA, hold that in making a Rule 48(a) dismissal determination a district court must fully assess the public interest, and remand the case for further proceedings consistent with these conclusions.

Dated: November 13, 2025

Respectfully submitted,

*/s/ Paul G. Cassell*

Warren T. Burns
(Texas Bar No. 24053119)
Darren P. Nicholson
Chase Hilton
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-5002
wburns@burnscharest.com
nicholson@burnscharest.com
chilton@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. Univ. St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)

Erin R. Applebaum
KREINDLER & KREINDLER
LLP
485 Lexington Avenue, 28th Floor
New York, New York 10017
Telephone: (212) 687-8181
eapplebaum@kreindler.com

Robert A. Clifford
Tracy A. Brammeier
CLIFFORD LAW OFFICES PC
120 North LaSalle Street, 36th Floor
Chicago, Illinois 60602
Telephone: (312) 625-6192
rac@cliffordlaw.com
tab@cliffordlaw.com

Charles S. Siegel
Waters & Kraus LLP
siegel@waterskraus.com

Sanjiv N. Singh
Sanjiv N. Singh, A Professional
Law Corp
ssingh@sanjivnsingh.com

Filippo Marchino
The X-Law Group PC
fm@xlawx.com

*Attorneys for Crime Victims' Representatives-Petitioners*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. Appx. P. 32(a)(7)(B) because this brief contains fewer than 7,800 words, as provided in Fed. R. App. P. 21(d)(1).

This brief complies with the typeface requirements of Fed. R. Appx. P. 32(a)(5) and the type-style requirements of Fed R. Appx. P. 32(a)(6) because this brief has been prepared in a proportionally spaced Time New Roman typeface using 14-point Times New Roman type.

*/s/ Paul G. Cassell*
Paul G. Cassell

*Attorney for Crime Victims' Representatives-Petitioners*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 13, 2025, the foregoing document was served on the parties to the proceedings below (i.e., the Government and The Boeing Company) through their counsel of record, and on the U.S. District Court for the Northern District of Texas (O'Connor, J.), via e-mail to the following addresses:

*Counsel for the United States*

> lorinda.laryea@usdoj.gov
> sean.tonolli@usdoj.gov

*Counsel for The Boeing Company*

> bhatch@mcguirewoods.com
> mark.filip@kirkland.com

*U.S. District Court for the Northern District of Texas*

> O'Connor_Orders@txnduscourts.gov

> */s/ Paul G. Cassell*
> Paul G. Cassell
>
> *Attorney     for     Crime     Victims'*
> *Representatives-Petitioners*

**ATTACHMENT 1 –**

**NOVEMBER 6, 2025 DISTRICT COURT ORDER GRANTING DISMISSAL**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Criminal Action No. 4:21-cr-5-O** |
| | § | |
| **THE BOEING COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Government's Rule 48(a) Motion to Dismiss the Information (ECF No. 312), filed May 29, 2025, ("Motion"); Response and Objection by counsel for the families of crash victims who object to the dismissal ("Movants"), filed June 18, 2025, (ECF No. 318); some of the victim's families' Motion for Appointment of a Special Prosecutor, filed June 18, 2025, (ECF No. 321); Mr. Keyter's Motion to Deny Government's Motion to Dismiss, filed June 24, 2025, (ECF No. 327); Mr. Keyter's Motion to Be Heard Pursuant 18 U.S.C. § 3771(a)(4), filed October 25, 2024, (ECF No. 277);[1] the Government's Reply, filed July 2, 2025 (ECF No. 334); and The Boeing Company's ("Boeing") Reply, filed July 2, 2025 (ECF No. 335). The Court held a hearing on the Motion on September 3, 2025, and heard from those who desired to speak, as well as arguments from counsel. Having considered the foregoing, the Government's Motion to Dismiss is **GRANTED**.

---

[1] Anthony Keyter does not qualify as a crime victim under the CVRA because he is not "directly or proximately harmed." 18 U.S.C.A. § 3771. As such, he has no rights here, and his Motion (ECF No. 277) is **DENIED**. Further, his Motion to Deny Government's Motion to Dismiss is **DISMISSED**. Nevertheless, the Court has considered his pleadings and provided him an opportunity to speak against the Government's Motion to Dismiss along with all of the victims who desired to speak.

## I.     BACKGROUND

After the catastrophic crash of two Boeing 737s operating as Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 resulted in 346 deaths, the Government began investigating Boeing's conduct.  Subsequently, the Government filed a Criminal Information charging Boeing with conspiracy to defraud and simultaneously entered into a deferred prosecution agreement ("DPA") on January 7, 2021.  On May 14, 2024, the Government notified the Court that Boeing breached the DPA for "failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of U.S. fraud laws throughout its operations."[2]  As a result, in July 2024 the parties submitted a plea agreement that required Boeing to plead guilty and serve a term of probation.  On December 5, 2024, the Court rejected the plea agreement because the terms of the parties' agreement were not in the public interest.

The Government now seeks to dismiss the Criminal Information under Rule 48(a) with Boeing's consent after signing a non-prosecution agreement ("NPA").  Some of the victims' families oppose this action, and others support it.[3]  While pursuing pre-trial resolution, the Government conferred with the victims' families and their counsel on two separate occasions and considered written submissions from families regarding the NPA.[4]  The Court held a hearing on the Motion on September 3, 2025, and heard from all who wished to speak, including the victims' family members. The Government's Motion to Dismiss is now ripe for the Court's review.

## II.     LEGAL STANDARD

Rule 48(a) of the Federal Rules of Criminal Procedure provides that the Government may dismiss an indictment, information, or complaint "by leave of court."  The leave of court

---

[2] Notice, ECF No. 199.
[3] Gov't.'s Mot. Dismiss, Ex. 2 (Gov't NPA Decl.), at 19, ¶ 2, ECF No. 312-2.
[4] *Id*. at 8–9, ¶ ¶ 24–27; *Id*. at 13–14, ¶34; *Id*. at 15–19, ¶ ¶ 44, 48, 50, 52.

requirement authorizes the judiciary to evaluate and, in an appropriate case, deny a Government motion. But to "preserve the essential functions" of the Executive and the Judicial branches, a court should only deny leave when dismissal is "clearly contrary to manifest public interest." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). A court may not "substitute its judgment for the prosecutor's determination or . . . second guess the prosecutor's evaluation" when making its public interest determination. *United States v. Salinas,* 693 F.2d 348, 351 (5th Cir. 1982). Rather, "[u]nless the court finds that the prosecutor is clearly motivated by considerations other than his assessment of the public interest, it must grant the motion to dismiss." *United States v. Hamm*, 659 F.2d 624, 630 (5th Cir. 1981); *see also Rinaldi v. United States*, 434 U.S. 22, 30 (1977) (holding that a trial court cannot properly deny a prosecutor's motion to dismiss unless the prosecutor's actions are "tainted with impropriety").

The Court "must begin with the presumption that the prosecutor acted in good faith" when moving to dismiss. *United States v. Welborn*, 849 F.2d 980, 983 (5th Cir. 1988). To evaluate whether the prosecutor acted in good faith, the Court may require the prosecutor "to supply sufficient reasons" that are "more than a conclusory statement in support of its motion." *Id.* at 983, 985; *see also Salinas,* 693 F. 2d 348 at 352. The Court may look to the record, including hearings. *See e.g., Rinaldi*, 434 U.S. at 30; *Salinas*, 693 F.2d at 352. Finally, the Court must ensure that the Government has satisfied its obligations under the Crime Victim's Rights Act ("CVRA"). *In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023).

## III.     ANALYSIS

The Government contends it has satisfied its obligations under Fed. R. Crim. P. 48(a). Movants disagree, asserting that dismissing the case is "against manifest public interest" such that the Court may deny dismissal under Fed. R. Crim. P. 48(a). Namely, Movants state that the

dismissal is against public interest because: (1) the NPA is an "unprecedented effort to short-circuit Rule 48(a)'s judicial review requirement;"[5] (2) Boeing's obligations are unenforceable under the NPA because the statute of limitations has run, meaning the Government would be unable to re-file charges against Boeing even if it breached; (3) the NPA exempts Boeing from any independent monitoring of its corporate compliance and safety efforts; (4) the monetary provision of the NPA does not secure the maximum possible fine; (5) the practical effect of the victim compensation payments is to allow the company to buy their way out of a criminal conviction; and (6) the Government's claims of litigation risk are meritless.[6]

The Court begins with the presumption that the Government is acting in good faith. *Welborn*, 849 F.2d 980 at 983. This presumption can be rebutted if (1) "the prosecutor's actions clearly indicate a betrayal of the public interest," *Hamm*, 659 F.2d at 629, and (2) when the motion is contested, the prosecutor fails "to supply sufficient reasons—reasons that constitute more than a mere conclusory interest." *Welborn*, 849 F.2d at 983. Actions that indicate betrayal of public interest include harassing a defendant, accepting a bribe, dismissing an indictment to gain a strategic advantage, to attend a social event, or because the prosecutor personally dislikes a victim. *See Salinas*, 693 F.2d at 352–53; *Hamm*, 659 F.2d at 629.

The Government declares that the NPA "secures meaningful accountability, delivers substantial and immediate public benefits, and brings finality to a difficult and complex case whose outcome would otherwise be uncertain."[7] Specifically, it states the NPA requires Boeing pay the maximum statutory fine, further pay into a crash-victim compensation fund, and commits Boeing

---

[5] Movants' Obj., 2, ECF No. 318.
[6] *Id.*
[7] Mot. Dismiss, 1, ECF No. 312.

to compliance improvements.[8]  And, it asserts that "the Company has made meaningful progress in improving its anti-fraud compliance and ethics program."[9]

Movants contest these reasons, and some of their arguments are persuasive.  For instance, the Court agrees with Movants that the NPA disregards the need for Boeing to be subject to independent monitoring.  Indeed, last year the Court denied a proposed plea agreement because it was against the public interest, in part, because Boeing would have had veto power over the Government's choice of an independent monitor.[10]  At that time, the Government was insistent that an independent monitor was necessary to remedy Boeing's corporate criminal culture as Boeing was unable to do so on its own, which endangered the flying public.  The Court agreed with the Government.  Now, however, under the Government's NPA, Boeing is no longer subject to an independent monitor and instead is authorized to pick its own "Independent Compliance Consultant."[11]

The NPA's "weakened provision"[12] is even more concerning than its predecessor.  It does not even pretend to address the need for a truly independent compliance monitor given Boeing's troubling history leading up to the Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 crashes and then, while under intense scrutiny by the Government, its breach of the DPA.  When asked by the Court how the Boeing-selected consultant would stop a culture of fraud, the Government said that the independent consultant would work "next to Boeing" to make sure it is "reacting and appropriately addressing any concerns raised by the FAA."[13] It then will "report to

---

[8] *Id.* at 13-15.
[9] *Id.* at 3.
[10] Order Denying Plea Agreements, ECF No. 282.
[11] Gov't Mot. Dismiss, EX 1 (NPA), ¶ 10, ECF No. 312-1.
[12] Movants' Obj., 28, ECF No. 318.
[13] Mot. Dismiss Hr'g. Tr. at 85: 12-16.

the government on what they are seeing" and if necessary, "make recommendations for improvements."[14]

The Government now believes that Boeing can be trusted to select a compliance consultant because Boeing has made "meaningful progress in improving its anti-fraud compliance and ethics programs."[15]  In summary, the Government's position in this lawsuit has been that Boeing committed crimes sufficient to justify prosecution, failed to remedy its fraudulent behavior on its own during the DPA which justified a guilty plea and the imposition of an independent monitor, but now Boeing will remedy that dangerous culture by retaining a consultant of its own choosing. Given Boeing's history related to this case (and the Government's continued failure to gain Boeing's compliance), the Movants are correct that this agreement fails to secure the necessary accountability to ensure the safety of the flying public.

The Court further agrees with Movants that the Government's claim of "uncertainty and litigation risk presented by proceeding to trial"[16] is unserious.  The Government has a confession from Boeing, signed by the CEO and Chief Legal Officer, admitting to all the elements of the conspiracy charge against it in the DPA.[17]  As such, the assertion that there is a legitimate risk that Boeing would be acquitted at a trial lacks support.[18]  Neither is the Government's contention that

---

[14] Mot. Dismiss Hr'g. Tr. at 86: 12-18.
[15] Gov't's Mot. Dismiss, 3, ECF No. 312.
[16] *Id.* at 4.
[17] DPA, ¶ 2, ECF No. 4.
[18] The Government asserts the risk of acquittal is legitimate because a jury acquitted a technical pilot of various charges related to his role in testing the 737 Max. This overlooks the nature of the charges made against the two Defendants. The technical pilot's central defense was that he was a scapegoat for the broader and systematic failure of Boeing's corporate culture which led to the crashes.  The Government agrees with that theme, given the nature of the information filed in this case and the stipulated facts agreed to by Boeing, which targets the corporate culture.

Boeing may litigate whether it actually breached the DPA a serious justification because Boeing agreed that determination was left to the Government's sole discretion.[19]

Movants contend that if the Court believes the Government's reasons are unsupported, it may hold that dismissal is clearly contrary to manifest public interest.[20]  The Court does not agree the case law permits that reasoning.  Movants rely on the Fifth Circuit's recent discussion of the "clearly contrary to manifest public interest" language of Rule 48(a).  *See In Re Ryan*, 88 F.4th 614 at 627 (collecting cases citing "clearly contrary to manifest public interest").  They suggest the Fifth Circuit's emphasis means this Court may evaluate the public interest independently when determining if leave to dismiss should be granted.[21]

In *Ryan*, the Fifth Circuit directed the Court to "assess the public interest *according to caselaw* as well as the CVRA," at the motion to dismiss stage.  *In re Ryan*, 88 F.4th at 627–28 (emphasis added).  The caselaw dictates that "the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice" requires—and authorizes the Court to do no more—than ensure that the prosecutor has acted in good faith motivated by the interest of justice and that he has satisfied his obligations under the CVRA.  *Cowan,* 524 F.2d at 514.

The Fifth Circuit is clear that a district court may not "substitute its judgment for the prosecutor's determination or . . . second guess the prosecutor's evaluation" when assessing if a motion to dismiss is against manifest public interest.  *Salinas*, 693 F.2d at 351; *see also United States v. Hamm*, 659 F.2d 624 at 631 ("[T]he prosecutor is the first and presumptively the best judge of where the public interest lies.  The trial judge cannot merely substitute his judgment for

---

[19] Movants identify a number of other objections which, in their view, undermine the Government's proffered basis for dismissal, such as the fine calculation, guideline calculation, limitations, and others. But, as discussed below, those objections as well as these, even if valid, do not overcome the presumption afforded the Government in this case.

[20] Movant's Obj., 4, ECF No. 318.

[21] Movant's Obj., 3, ECF No. 318.

that of the prosecutor."). Otherwise, the judiciary would "encroach[] on the primary duty of the Executive to take care that the laws are faithfully executed." *Hamm*, 659 F. 2d 624 at 631.

*Cowan* is instructive. 524 F.2d 504. There, the trial judge refused to grant leave to dismiss because he did not believe dismissing serious charges in favor a guilty plea carrying a lower penalty in an unrelated case was in the interest of justice. The Fifth Circuit reversed, holding that the trial judge's disapproval of the dismissal was "legally insufficient to overcome the presumption of the government's good faith and establish its betrayal of the public interest." *Id*. at 514.

Just as the trial judge in *Cowan*, the Court's concerns about the Government's decision-making in this case are an insufficient reason to deny leave to dismiss. Thus, Movants' argument that the Government's agreement in this case is contrary to public interest, while compelling, cannot justify denying leave to dismiss under Rule 48(a).

Finally, and as emphasized by the Fifth Circuit in the mandamus proceedings following the entry of the DPA in this case, the Court cannot grant leave unless the Government fulfilled its obligations under the Crime Victim's Rights Act. *See In re Ryan*, 88 F.4th at 627 ("[I]n passing on the government's motion under Rule 48(a) the court will expect to see the prosecutor recount that the victim has been consulted on the dismissal and what the victim's views were on the matter."); *see also id.* at 626 (stating in the event of a dismissal, "courts retain adjudicatory responsibility, including an obligation to apply the CVRA"). The CVRA requires that crime victims—here, the family members of those who died in the crashes—have "[t]he right not to be excluded from any such public court proceeding," "the reasonable right to confer with the attorney for the government in the case," and "the right to be informed in a timely manner of any plea bargain or deferred prosecution agreement." 18 U.S.C. § 3771.

The Court finds that the Government has complied with the CVRA. The Government conferred with the victims' families after the plea agreement was denied in December 2024 and noted that the families present wanted the Government to go to trial.[22] The Government conferred with the victims' families about the framework of the then-potential NPA in May 2025 and considered written submissions afterward.[23] It noted that some families supported the NPA and others opposed it.[24] It informed the families that Boeing accepted the NPA before informing the Court.[25] At the hearing on the Government's motion, counsel for more than 60 of the families stated that "there's been reasonable conferral, to say otherwise would be unfair."[26] On this record, the Government has satisfied its obligations under the CVRA.

## IV.     CONCLUSION

The Court recognizes that "in every political institution a power to advance the public happiness involves a discretion that may be abused." THE FEDERALIST NO. 41 (James Madison). Nevertheless, poor discretion may not be countered with judicial overreach: "the judges can exercise no executive prerogative, though they are shoots from the executive stock." THE FEDERALIST NO. 47 (James Madison). The Court acknowledges that it does not have the authority to deny leave because it disagrees with the Government that dismissing the criminal information in this case is in the public interest. Accordingly, because the Government has not acted with bad faith, has given more than mere conclusory reasons for its dismissal, and has satisfied its

---

[22] Gov't NPA Decl. at 8–9, ¶¶ 24–28, ECF No. 312-2.
[23] Id. at 15, ¶ 44,
[24] Id. at 19, ¶ 52.
[25] Id. at 20, ¶ 55.
[26] Mot. Dismiss Hr'g. Tr. at 124: 22–23, ECF No. 353.

obligations under the CVRA, the Motion to Dismiss (ECF No. 312) is **GRANTED**.  The Motion

to Appoint a Special Prosecutor (ECF No. 321) is **DENIED**.

       **SO ORDERED** this **6th day** of **November 2025**.

Reed O'Connor

**CHIEF UNITED STATES DISTRICT JUDGE**